**Frank GIGLIO, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–1444.**

United States Court of Veterans Appeals.

May 29, 1992.

As Amended July 24, 1992.

Before IVERS, Associate Judge.

**MEMORANDUM DECISION**

IVERS, Associate Judge:

Appellant, Frank Giglio, seeks review of an August 27, 1990, decision of the Board of Veterans' Appeals (BVA or Board). In that decision, the Board denied entitlement to increased ratings for residuals of gunshot wounds to both his right and left legs. On January 17, 1992, appellant filed an informal brief asserting that the Board did not consider his entire medical record, including x-rays taken of his legs. Appellant claimed that he should be rated forty-percent for residuals of gunshot wounds in his right leg and thirty-percent for his left leg, and ten-percent for neurological problems for both of his legs. On February 14, 1992, the Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance, for acceptance of the motion in lieu of a brief, and for a stay of proceedings. For the reasons set forth below, the Secretary's motion is granted as to appellant's claim for increase in his service-connected ratings but, with respect to appellant's claim for his arthritic knee condition, the motion is denied and the matter is remanded to the BVA for readjudication. This Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)).

Appellant was born on May 18, 1898, and served in the United States Army during World War I, from February 26, 1918, to August 6, 1919. R. at 25–26. His service records reflect participation in the following campaigns: the Aisne–Marne Offensive, the St. Mihiel Offensive, and the Meuse–Argonne Offensive. R. at 25. Ap-

pellant was wounded on July 18, 1918. R. at 2. After the war ended, he continued to serve as a member of the occupation forces until he was honorably discharged on August 6, 1919. *Id.* Appellant is currently rated thirty-percent disabled for residuals of gunshot wounds to Muscle Group XIV of his right leg, ten-percent disabled for residuals of gunshot wounds to Muscle Group XIV of his left leg, ten-percent disabled for a neurological problem of the left leg, and zero-percent disabled for a neurological problem of the right leg. He has a combined rating of fifty-percent. R. at 137.

On October 5, 1988, appellant filed a claim with the Veterans' Administration (now the Department of Veterans Affairs) (VA) for an increase in his disability ratings. R. at 104. Although appellant was not reopening a previously disallowed claim, he still was required to submit "evidence sufficient to justify a belief by a fair and impartial individual that the claim [was] well grounded." 38 U.S.C. § 5107(a) (formerly § 3007(a)). Outpatient treatment records from the VA Medical Center in Albany, New York, were submitted. R. at 110–32. These records covered treatment from February 22, 1988, to March 31, 1989, and included an x-ray report of his chest and right knee, dated January 19, 1989. R. at 128. However, most of appellant's treatment involved treatment for non-service-connected conditions including pain in his knees which was attributed to degenerative joint disease. Dr. Russell, the VA treating physician, noted that the "[d]egenerative [changes were] most likely [due to] trauma ([status post] gunshot wounds WWI)." R. at 111.

Degenerative joint disease, or osteoarthritis, is defined as "arthritis of middle age characterized by degenerative and sometimes hypertrophic changes in the bone and cartilage of one or more joints and a progressive wearing down of apposing joint surfaces with consequent distortion of joint position usually without bony stiffening." Webster's Medical Desk Dictionary 501 (1986). Hypertrophic changes in appellant's knees were first noted in a March 15, 1960, x-ray report. R. at 78.

Appellant was denied service connection for arthritis in his knees by a rating board in an April 18, 1960, rating decision. R. at 83. Although the medical records submitted do not show any medical diagnosis that appellant's service-connected disabilities have increased since appellant's last VA examination in 1960, they do show that appellant's arthritic condition may be secondary to his service-connected disabilities. *See* 38 C.F.R. § 3.310(a) (1991).

■ The Court notes that the Board chose not to discuss whether appellant's arthritic knee condition is secondary to his service-connected disorders because the issue was "not procedurally developed for appellate purposes, and [was] not properly before the Board." *Frank Giglio*, BVA 91–29149, at 2 (Aug. 27, 1991). No explanation was given by the Board as to why appellant's arthritic condition was not discussed. Instead appellant was informed that if he intended to pursue the claim for arthritis that he would have to initiate a new claim through the Regional Office. The Court holds that the Board erred in its decision not to rule on appellant's arthritic claim. The BVA must adhere to 38 U.S.C. § 7104(a) and 38 C.F.R. § 3.303(a), which require the Board to consider the entire evidence of record in making its decisions. The Board is not limited to those issues specifically mentioned in appellant's VA Form 1–9 appeal. *See Douglas v. Derwinski*, 2 Vet.App. 435, 438–40 (1992). But cf. *Harris v. Derwinski*, 1 Vet.App. 180 (1991) (Court does not have jurisdiction to review BVA decision that is nonfinal with respect to inextricably intertwined claims).

■ Therefore, the Court finds, as a matter of law, that the medical record constitutes "new and material" evidence under *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991) (new evidence is material if there is a "reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome"), and therefore appellant's previously disallowed arthritic claim should

have been reopened pursuant to *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991) (the Board "must evaluate the merits of appellant's claim in light of *all* the evidence, both new and old.") (emphasis in original).

A review of the medical records submitted does not show any diagnosis that appellant's service-connected disabilities have increased since appellant's last VA examination. The Court concludes that the BVA's finding that appellant's service-connected injuries to his right and left thighs have not increased in severity is plausible, and hence not clearly erroneous. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 42–53 (1991) (Court cannot substitute its judgment for that of the BVA on issues of material fact; if there is a plausible basis in the record for the factual determinations, the Court cannot overturn them).

With respect to the Secretary's motion for summary affirmance as to his claim for increased ratings for residuals of gunshot wounds to both of his legs, appellant has not demonstrated that the BVA committed either factual or legal error which would warrant reversal or remand. The Court is also satisfied, with respect to that claim, that the BVA decision satisfies the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)), and the benefit of the doubt doctrine of 38 U.S.C. § 5107(b) (formerly § 3007(b)). *See Gilbert*, 1 Vet.App. at 53–57. It is further held that summary disposition of that claim is appropriate. *See Frankel v. Derwinski*, 1 Vet.App. 23 (1990).

Upon consideration of the foregoing, the Secretary's motion for summary affirmance is GRANTED as to appellant's claim for increased ratings, but appellant's claim for service connection for arthritis is REMANDED to the BVA for further development and reconsideration of all evidence, issues, and regulations in a manner consistent with this memorandum decision.